UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY LOUDENBACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:08-cv-988-WTL-DML |
| | ) |
| PILOT TRAVEL CENTERS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Defendant's Motion for Summary Judgment (Docket No. 45). The motion is fully briefed, and the Court, being duly advised, now **GRANTS** the motion for the reasons set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not

required to scour the record in search of evidence to defeat a motion for summary judgment."
*Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The Plaintiff, Gary Loudenback, began working for Pilot Travel Centers, LLC ("Pilot") in 1995. During his time at Pilot, Loudenback worked first as a travel center assistant manager, and later as a travel center general manager. The travel center general manager is the top management position at a particular store. Loudenback's final position with Pilot was travel center general manager of store 28 in Daleville, Indiana. In this position, Loudenback reported to regional manager Donna Brough.

Loudenback stated that he "had a pretty good rapport with [Brough] for the most part." Docket No. 47 Ex. 5 at 41. However, approximately two months before his employment was terminated, Loudenback and Brough had a disagreement because Brough intended to terminate travel center assistant manager Brian Madison. Loudenback told Brough that, in his opinion, terminating Madison was not an appropriate way to cut costs.

Several months later, in May 2006, while reviewing profit and loss statements, Brough discovered that the company that processed Speedway credit cards had tendered thousands of dollars of reverse billings to Pilot. These "charge backs" were based on customers' use of Speedway credit cards at the Daleville store. From time to time many Pilot stores incur charge backs, and the existence of charge backs is not grounds for termination. Brough called Loudenback and asked about the charge backs. Loudenback responded that the Daleville store had been having trouble with Speedway credit cards. Brough asked Loudenback to call Pilot's corporate office to report the charge backs and to determine how Pilot could recover its money.

Approximately one week later, Brough called Loudenback to find out what he learned from Pilot's corporate office. Loudenback had not received a response, so Brough called Pilot's office herself. At this point Brough learned that the charge backs arose from manual entries in the Daleville store's back office system. Brough ultimately decided to go to the Daleville store to help Loudenback look for manual sales tickets. These manual tickets would provide evidence of the Speedway credit card purchases and would allow Pilot to seek repayment of the charge backs.

On May 24, 2009, Brough arrived at the Daleville store. She asked Loudenback to retrieve all of the daily shift packets from January 1, 2006 through May 22, 2006. As Brough sorted through the shift packets, she realized that several were missing. Brough printed "End of Day" reports for each of the missing days and discovered that on each day that a report was missing, someone made manual entries of Speedway credit cards. Brough noticed that each day that was missing its report was also a charge back day. In addition, the charge back amounts matched the manual entries of the Speedway credit cards. However, because there were no manual sales tickets to cover the manual entries there should have been a cash overage. Brough asked Loudenback what could have happened to the missing reports. Loudenback said that he had no idea.

At this point, Brough called Pilot's human resource zone manager, Al Jecker. Jecker told her to contact an auditor. Brough ultimately reached auditor Dan Black Coal, who agreed to meet her at the store the next morning. Brough also spoke with assistant manager Madison, who also agreed to come to the store the next day. At this point, Brough told Loudenback that someone in the Daleville store was stealing, accordingly, he was suspended pending further

3

investigation. Loudenback turned in his keys and his company credit card and gave Brough his two week notice of resignation.

The next morning, Brough and Coal continued their investigation. Together, they concluded that for the days with missing paperwork, although the cashier shift summary reports looked fine, there was cash missing. By reviewing the work schedule, they also noted that Loudenback was the responsible manager at the time that the manual entries were made.

Brough then called Jecker. He told her to bring Loudenback in, give him a chance to explain, and if Loudenback was unable to do so, Brough should terminate Loudenback and call the local police. Accordingly, Brough called Loudenback. At the meeting between Brough, Loudenback, and Coal, Loudenback insisted that the situation involved "typical" charge backs and that as soon as they tracked down the missing reports, Pilot would recoup its money. *See* Docket No. 47 Ex. 5 at 62. As the meeting became more acrimonious, Loudenback told Brough that he was "done with" the situation and he rose to leave. *Id.* at 62-63. Brough then terminated Loudenback's employment. *Id.* at 63. After Loudenback left, Brough called the Daleville Police Department and reported the theft.

The next morning, police officers arrived at Loudenback's house around 8:00 a.m. They escorted him to the police station where he gave a statement denying that he stole from Pilot. After making his statement, Loudenback was released. On June 30, 2006, almost one month after Loudenback's termination, he was arrested. On July 7, 2006, the prosecutor filed an Information charging Loudenback with theft. Seven months later, on February 8, 2007, the criminal charge was dismissed.

Loudenback ultimately brought this civil suit, which alleges malicious prosecution, abuse

4

of process, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress. Pilot properly removed the case to federal court and has now moved for summary judgment on all of Loudenback's claims.

### III.  DISCUSSION

As an initial matter, Loudenback concedes that his claim for negligent infliction of emotional distress is not actionable in this case. The Court agrees. Accordingly, Pilot's motion for summary judgment is **GRANTED** as to this claim.

### A. Malicious prosecution.

Loudenback claims that Pilot committed malicious prosecution when it "misused and misapplied the legal process when putting into motion the prosecution . . . for . . . felony theft." Compl. ¶ 15. The essence of a malicious prosecution claim is "the notion that the plaintiff . . . has been improperly subjected to legal process." *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001) (citing *Ziobron v. Crawford*, 667 N.E.2d 202, 208 (Ind. Ct. App. 1996)). A malicious prosecution claim has four elements: "(1) the defendant . . . instituted or caused to be instituted an action against the plaintiff . . . ; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.* (citing *Trotter v. Ind. Waste Sys.*, 632 N.E.2d 1159, 1164 (Ind. Ct. App. 1994)). In the instant case, the Defendant concedes that the first and fourth elements are established. The parties' arguments are, thus, confined to the second and third elements.

With respect to the probable cause element, in a malicious prosecution case, "probable cause exists 'when a reasonably intelligent and prudent person would be induced to act as did the

person who is charged with the burden of having probable cause.'" *Id.* at 379 (quoting *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995)); *see also Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1088 (Ind. Ct. App. 1992) (citing *Bd. of Comm'rs of Hendricks County v. King*, 481 N.E.2d 1327, 1329 (Ind. Ct. App. 1985)).

In the instant case, the Defendant alleges that there was probable cause because "[a] reasonably intelligent and prudent person faced with the same facts Brough and Coal faced would have believed Loudenback committed theft." Docket No. 56 at 9. The Defendant points to: (1) the existence of multiple charge backs from Speedway credit cards; (2) missing paperwork for nearly all of the charge back days; (3) the fact that only a manager could make the manual entries; (4) the fact that Loudenback was the manager on duty at the time the manual entries were made; (5) the absence of cash overages for charge back days; and (6) Loudenback's inability to explain the missing paperwork or the absence of cash overages. *Id.* at 9-10. Loudenback responds that this evidence omits certain key facts.[1] Based on this information, which for summary judgment purposes, the Court presumes to be true, Loudenback asserts that there is "a disputed fact whether probable cause existed to institute the criminal proceedings." Docket No. 62 at 14. The Court disagrees. None of the information introduced by Loudenback changes the fact that a reasonably intelligent person faced with the situation presented here

---

[1] This "crucial information" includes the following: (1) charge backs are routine, occur at every store, and existed at the Daleville store for months before Brough took action; (2) some of the charge backs were remedied during the internal investigation; (3) Loudenback cooperated with the internal investigation; (4) no one asked Loudenback if he stole and no one actually saw Loudenback steal from the store; (5) the investigation was completed in one day and did not include an analysis of the 2005 or 2006 audits; (6) Loudenback's bank records were never requested and these records could have shown that Loudenback never deposited the allegedly stolen funds; and (7) Coal stated that he did not personally believe that Loudenback had stolen from the store. *See* Docket No. 62 at 11-13.

would have believed that a theft occurred and that Loudenback, who was on duty when the suspicious entries were made, was responsible. Thus, the Defendant had probable cause for its actions related to Loudenback.

In addition, viewing the evidence in the light most favorable to Loudenback, there is absolutely no evidence indicating that the Defendant acted with malice when it caused criminal charges to be brought against Loudenback. "[M]alice may be inferred from a total lack of probable cause, from the failure to make a reasonable or suitable inquiry, and from a showing of personal animosity." *Clark*, 598 N.E.2d at 1089 (citing *F.W. Woolworth Co., Inc. v. Anderson*, 471 N.E.2d 1249, 1254 (Ind. Ct. App. 1984)). Here, Loudenback claims that there was not probable cause and the investigation was neither reasonable nor suitable. In addition, he argues that this element is best left to a jury. First, as explained above, the Defendant did have probable cause. Loudenback's second argument fares no better. Loudenback claims that the Defendant's investigation was neither reasonable nor suitable because no one asked him if he stole from the store. In addition, he asserts that Pilot "failed to ask other employees if anyone witnessed [him] stealing from Pilot." Docket No. 62 at 15. Finally, Loudenback claims that Brough's failure "to consider computer problems might account for the chargebacks" and her dismissal of "the idea that the paperwork . . . could easily have been misplaced," indicates that the investigation was unreasonable. *Id*.

The cases that have deemed investigations unreasonable have involved situations that are significantly different from the present one. For example, in *Woolworth*, the court found malice because the "investigation consisted largely of reviewing cash register tapes from the registers in the automotive department alone." 471 N.E.2d at 1254. "No investigation was conducted to

determine whether . . . Anderson might have deposited the money in another department's registers [as he was instructed to do by his superior]." *Id*. at 1252, 1254. The sheer lack of investigation in *Woolworth* led the court to find malice. However, in the instant case it is undisputed that the Defendant did more than just review paperwork. In addition to looking through the financial data, Brough and Coal spoke with both Loudenback and assistant manager Madison. Their investigation, unlike the one in *Woolworth*, was both reasonable and suitable. Viewing the evidence in the light most favorable to Loudenback, there was probable cause, the investigation was reasonable and suitable, and there is absolutely no evidence in the record indicating personal animosity. In short, there is nothing showing that the Defendant acted with malice. Accordingly, the Defendant's motion for summary judgment is **GRANTED** as to Loudenback's malicious prosecution claim.

      **B.**      **Abuse of Process.**

Next, Loudenback claims that the Defendant's conduct amounts to an abuse of process. "The tort of abuse of process consists of two elements: (1) ulterior motive and (2) use of process that would not be proper in the normal prosecution of the case." *Conner v. Howe*, 344 F. Supp. 2d. 1164, 1175 (S.D. Ind. 2004) (citing *Watters v. Dinn*, 633 N.E.2d 280, 288 (Ind. Ct. App. 1994)); *Nat'l City Bank, Ind. v. Shortridge*, 689 N.E.2d 1248, 1252 (Ind. 1997). "'The gravamen of [this] tort is not the wrongfulness of the prosecution, but some extortionate perversion of a lawfully initiated process to illegitimate ends.'" *Conner*, 344 F. Supp. 2d. at 1175 (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)); *Shortridge*, 689 N.E.2d at 1252. "[I]n order to prevail, the plaintiff must have some evidence tending to show that the defendant used process for an end other than that for which it was designed." *Conner*, 344 F. Supp. 2d at 1175 (citing

*Comfax Corp. v. N. Am. Van Lines, Inc.*, 638 N.E.2d 476, 481 (Ind. Ct. App. 1994)). "'[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Reichhart*, 674 N.E.2d at 31 (quoting *Groen v. Elkins*, 551 N.E.2d 876, 878-79 (Ind. Ct. App. 1990)). The relevant inquiry is "whether the complained-of-acts were 'procedurally and substantively proper under the circumstances.'" *Id.* at 32 (quoting *Groen*, 551 N.E.2d at 879).

In the instant case, the Defendant claims that "Loudenback had no evidence of any ulterior motive on the part of either Brough or Coal." Docket No. 46 at 12. Although Loudenback "believes Brough did want to harm his reputation or career, he bases his belief solely on . . . Brough's decision to contact the police rather than simply firing him." *Id*. In addition, the Defendant argues that Loudenback cannot show that it perverted the criminal process. "It is undisputed that all Brough and Coal did with regard to the criminal process was provide statements to the police." *Id*. Loudenback disagrees with these conclusions. He claims, without citing any evidence whatsoever, that Pilot used the legal process to teach its employees that "'theft from the company absolutely would not be tolerated.'" Docket No. 62 at 16 (quoting Docket No. 46 at 15). Viewing the evidence in the light most favorable to Loudenback, there is simply nothing indicating that the Defendant acted with an ulterior motive and used the judicial process in an improper manner. Accordingly, the Defendant's motion for summary judgment is **GRANTED** as to the abuse of process claim.

    **C.**    **Defamation.**

Loudenback's fourth claim is that the Defendant defamed him during a meeting between employees from the Daleville and Chesterfield stores. At this meeting, a Pilot employee stated

9

that Loudenback was terminated for theft. Docket No. 46 at 12-13 (citing Docket No. 47 Ex. 5 at 43-45). In addition, Loudenback claims that the Defendant defamed him when it informed the authorities of the suspected theft. *See* Docket No. 62 at 21.

"Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff." *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999) (citing *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62,65 (Ind. Ct. App. 1999)). "To establish a claim of defamation, a plaintiff must prove the existence of 'a communication with defamatory imputation, malice, publication, and damages.'" *Trail v. Boys & Girls Club of Northwest Ind.*, 845 N.E.2d 130, 136 (Ind. 2006) (quoting *Davidson*, 716 N.E.2d at 37); *Rambo v. Cohen*, 587 N.E.2d 140, 145 (Ind. Ct. App. 1992). To be actionable, a statement "must not only be defamatory in nature, *but false*." *Trail*, 845 N.E.2d at 136 (citing *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 687 (Ind. 1997)). "A communication may be defamatory *per se* or *per quod*." *Rambo*, 587 N.E.2d at 145. "[A] communication is defamatory *per se* . . . if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation, or; (4) sexual misconduct." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 570 (1977)). "If a communication is defamatory *per se*, the plaintiff is entitled to presumed damages 'as the natural and probable consequence[]' of the *per se* defamation." *Id.* (quoting *Elliott v. Roach*, 409 N.E.2d 661, 683 (Ind. Ct. App. 1980)). In other words, in cases of *per se* defamation, "[t]he law presumes the plaintiff's reputation has been damaged, and the jury may award a substantial sum for this presumed harm, even without proof of actual harm." *Id.* However, the plaintiff still must show the other elements of defamation (a communication with

defamatory imputation, malice, and publication).  *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007).

### 1. Statement to Pilot employees.

Loudenback correctly notes that the statement, made to other Pilot employees, that he was terminated for theft is defamatory *per se* because it imputes criminal conduct.  Thus, damages are presumed.  In addition, the publication element is met because the statement was made to a group of Pilot employees.  The parties' most substantial arguments relate to the substance (or "defamatory imputation") of the statement.  According to the Defendant, the statement was non-defamatory because it was true that Loudenback was fired for theft.  Loudenback, relying on Jecker's deposition testimony, claims that he was actually fired for "SSA chargebacks," thus, the statement that he was terminated for theft was false.  Docket No. 62 at 17 (citing Docket No. 63 Ex. 6 at 23).  Assuming that the statement to the employees was defamatory, and assuming that Loudenback has shown malice, he still cannot prevail on this claim because of the qualified privilege.

The qualified privilege of common interest "applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty."  *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. 1994).  Based on "'the important role of free and open intracompany communications and legitimate human resource management needs,'" the communication of some employment information is shielded by the qualified privilege. *Trail*, 845 N.E.2d at 136 (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)); *Schrader*, 639 N.E.2d at 262 (stating that

11

"[i]ntracompany communications regarding the fitness of an employee are protected by the qualified privilege, in order to accommodate the important role of free and open intracompany communications and legitimate human resource management needs."). "The privilege protects personnel evaluation information communicated in good faith" and the "essential elements . . . are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only." *Schrader*, 639 N.E.2d at 262. "'Whether a statement is protected by qualified privilege is a question of law unless the facts are in dispute.'" *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 969 (Ind. Ct. App. 2001) (quoting *K Mart Corp. v. Brzezinski*, 540 N.E.2d 1276, 1282 (Ind. Ct. App. 1989)); *Schrader*, 639 N.E.2d at 262 ("Absent a factual dispute, whether a statement is protected by a qualified privilege is a question of law.").

In the instant case, the Defendant claims that employees at the Daleville and Chesterfield stores "had a common interest in knowing the reason for Loudenback's termination: each cared about job performance and job security." Docket No. 46 at 14. Loudenback takes issue with this argument and asserts that the statement was "not made in response to employees [sic] questioning about Loudenback's separation, [or] in fear of bad reports regarding their personal job performance or individual job security." Docket No. 62 at 19. Rather, according to Loudenback, the statement was made with no legitimate purpose.

However, in *Schrader*, the Indiana Supreme Court concluded that statements, made during a weekly staff meeting, explaining why certain employees were fired, were protected by the qualified privilege. 639 N.E.2d at 260, 262. The court believed that the company's purpose – quelling rumors about theft that were affecting morale – was legitimate. Loudenback attempts

to distinguish *Schrader*, however, his arguments are wholly unsuccessful. Like the employer in *Schrader*, the Defendant in this case disseminated information related to the Plaintiff for a legitimate employment purpose. Accordingly, the statement made during the employee meeting was privileged.

But, as Loudenback notes, just because the statement was privileged does not mean that the Defendant is entitled to summary judgment. If the Defendant abused the privilege then it may be lost.

> A statement otherwise protected by the doctrine of qualified privilege may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth.

*Schrader*, 639 N.E.2d at 262. Here, the Plaintiff pursues the second and third arguments.

As to the excessive publication argument, Loudenback claims that the Defendant "publish[ed] the statements to employees without any real necessity for the information." Docket No. 62 at 20. However, as noted above, the Defendant did have legitimate reasons for disseminating the information – to assure employees that their jobs were secure and to remind them that theft from the company was not tolerated. Docket No. 46 at 14-15. Only employees at the Daleville and Chesterfield stores, who were the most likely to hear about Loudenback's termination, were informed of the situation. Viewing the evidence of record in the light most favorable to Loudenback there was not excessive publication. The privilege was not abused.

Loudenback's second argument – that Pilot made the statement without belief or grounds for belief in its truth – fares no better. Loudenback claims that Coal's deposition testimony that he "did not see any proof that Gary Loudenback personally had taken any money from Pilot"

13

indicates that the statement was made without belief or grounds for belief in its truth. Docket No. 63 Ex. 5 at 31-32. However, during his deposition Coal clarified that what he meant was that he never personally saw Loudenback steal from the store. *Id*. at 34. Coal then states that because the "manipulation was done on the back end" and because "the only person that was on duty during these times was Gary Loudenback," he believed that Loudenback was responsible. *Id*. at 35. Thus, despite Loudenback's attempt to claim that Coal's deposition testimony shows that the statement made to the employees was made without belief or grounds for belief in its truth, a review of the entire record negates this argument. Having viewed all of the evidence in the light most favorable to Loudenback, there is nothing indicating that the statement to the employees was made without belief or grounds for belief in its truth. Accordingly, the privilege was not abused. Therefore, summary judgment is **GRANTED** on this portion of the defamation claim.

### 2. Statement to law enforcement.

Summary judgment is also appropriate on Loudenback's defamation claim based on the Defendant's statements to law enforcement. Assuming, as before, that the Defendant's statement was defamatory, "[t]o 'enhance[] public safety by facilitating the investigation of suspected criminal activity,' communications to law enforcement officers are protected by [the] qualified privilege." *Kelley*, 865 N.E.2d at 597 (quoting *Holcomb*, 858 N.E.2d at 108); *see also Williams v. Tharp*, 914 N.E.2d 756, 763 (Ind. 2009) (stating that, in Indiana, communications made to law enforcement reporting criminal activity are qualifiedly privileged). Of course as explained above, the privilege is not without limits.

Here, Loudenback argues only that Brough's and Coal's statements to the police were

14

made without belief or grounds for belief in its truth.  In *Williams*, the Indiana Supreme Court considered what it means "to make a statement without belief or grounds for belief in its truth" in the context of the law enforcement privilege.  *Williams*, 914 N.E.2d at 764 (internal punctuation omitted).  The court concluded that a statement is made "without belief or grounds for belief in its truth," and thus the qualified privilege is defeated only if the statement: (1) is made with knowledge that the statement is false; or (2) is so obviously mistaken as to support a reasonable inference that the speaker has lied.  *Id.* at 765.  Loudenback claims, without citing any evidence whatsoever, that "Pilot targeted Loudenback and directed the investigation to his conduct and no one else" even though it "had no evidence that would allow the reasonable inference that Loudenback actually stole."  Docket No. 62 at 22.  However, as discussed above, based on the internal investigation, a reasonable person would have believed that Loudenback committed theft.  Despite Loudenback's contention that Coal "did not personally believe Loudenback had stolen property from Pilot," *id.* at 21, as discussed above, a review of the totality of Coal's deposition indicates that although Coal never personally saw Loudenback steal from the store, he believed that Loudenback was responsible.  *See* Docket No. 63 Ex. 5 at 34-35.  Loudenback's attempt to claim that Coal's deposition testimony was made without belief or grounds for belief in its truth is simply not convincing, given the totality of Coal's testimony.  Having viewed the evidence in the light most favorable to Loudenback, there is absolutely nothing before the Court indicating that Brough's or Coal's statements were made without knowledge of their falsity or were so obviously mistaken as to support an inference that they lied.  Accordingly, summary judgment is also **GRANTED** as to this portion of Loudenback's defamation claim.

D.      **Intentional infliction of emotional distress.**

Loudenback's final claim is for intentional infliction of emotional distress. The Indiana Supreme Court recognized this tort in *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). Subsequent cases have developed the parameters of the tort and now, intentional infliction of emotional distress "arises when a defendant (1) engages in 'extreme and outrageous' conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind. Ct. App. 1999) (quoting *Methodist Hosp.*, 690 N.E.2d at 691). "Liability for intentional infliction of emotional distress is found only if there is extreme and outrageous conduct." *Id*. at 752.

> The comments to Restatement, Section 46 read: "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"

*Id.* at 752-53 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). "What constitutes 'extreme and outrageous' conduct depends, in part upon prevailing cultural norms and values." *Id*. at 753. However, "[i]n the appropriate case, the question can be decided as a matter of law." *Id.* (citation omitted).

In *Dietz*, the court explained that "[r]igorous requirements must be met to prove the tort [of intentional infliction of emotional distress]." *Dietz*, 754 N.E.2d at 970. The plaintiff in *Dietz* asserted that one of the defendants "accused her of substance abuse, shoplifting, and dishonesty in a gruff and intimidating matter." *Id*. The court opined that "[e]ven if the interview proceeded

16

as asserted, [the plaintiff's] intentional infliction of emotional distress claim fails as a matter of law." *Id*. Although the defendant may have unreasonably detained and defamed the plaintiff, "his actions . . . d[id] not constitute outrageous behavior." *Id*. Viewed in context he simply "did not exceed all bounds usually tolerated by a decent society." *Id.*

So too in the instant case. Pilot's actions may have been imprudent or insulting. However, based on *Dietz*, they were not so outrageous as to "exceed all bounds . . . tolerated by a decent society." *Id*. Loudenback has presented no evidence supporting his claim, and, having viewed all of the evidence in the light most favorbale to Loudenback, the Court is convinced that summary judgment is appropriately **GRANTED** on the intentional infliction of emotional distress claim.

## CONCLUSION

For the forgoing reasons the Defendant's Motion for Summary Judgment (Docket No. 45) is **GRANTED**.

SO ORDERED: 07/26/2010

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Sarah Jane Graziano
Hensley Legal Group
sgraziano@hensleylegal.com

Alan L. McLaughlin
Littler Mendelson PC
amclaughlin@littler.com